UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

---

CROWLEY, et al.,

        Plaintiffs,

v.

SIX FLAGS GREAT ADVENTURE, et al.,

        Defendants.

Civil Action No. 3:14-cv-2433-BRM-TJB

**OPINION**

---

**MARTINOTTI, DISTRICT JUDGE**

Before this court is Defendant Six Flags Great Adventure's ("Six Flags") Motion to Preclude Plaintiffs' Proposed Liability Expert and for Summary Judgment. (ECF No. 45-1.) Plaintiff opposed this motion (ECF No. 55) and the Court heard oral argument on the motion on December 5, 2016 pursuant to Federal Rule of Civil Procedure 78(a). For the reasons set forth below and for good cause having been shown, Six Flags' motion is **GRANTED in part** and **DENIED in part**.

**I. BACKGROUND**

Plaintiff Jonathon Crowley ("Crowley") (together with Jessica Crowley, "Plaintiffs") alleges to have suffered an injury involving the American Hi-Striker game (the "Game") at Six Flags, a game in which guests test their strength by swinging a rubber mallet to hit a strike pad, causing a LED tower to light up and ring a bell for prizes. Crowley, while playing the Game, injured himself when the rubber mallet bounced off the strike pad and hit him in the face. Plaintiffs alleged: (1) Six Flags negligently caused operated and/or maintained the Game causing a

dangerous condition (Count I); (2) Six Flags "negligently and defectively design[ed], manufactur[ed], repair[ed], refurbish[ed], recondition[ed], market[ed], s[old], or otherwise place[d] in the stream of commerce the [Game] causing [it] to be in a dangerous and unsafe condition" (Count II); (3) failure to warn (Count III)[1]; and (4) loss of consortium as to Jessica Crowley. (Compl. (ECF No. 1-1); *see* Pls.' Resp. to Def.'s Statement of Facts (ECF No. 48-3).)

Plaintiffs retained Mark T. Hanlon, P.E. of Hanlon Engineering PLLC as their liability expert. Mr. Hanlon is a registered licensed engineer and founder of his own engineering firm specializing in the design and development of new and existing amusement park rides and show equipment. (Cert. in Lieu of Aff. of Michael R. Hobbie, Esq., Ex. I (ECF No. 53-4).) Plaintiffs submitted Mr. Hanlon's expert report ("Hanlon Report") in which Mr. Hanlon opined Crowley's injuries were caused by a "weak link" in the Game's mechanism, describing the "check valve inside the shock absorber," which "regulates the flow of air and/or oil inside the shock" and "regulates the speed at which the shock can extend or retract." (*Id.*) Mr. Hanlon posited that the check valve failed, causing the springs inside the strike pad to "rapidly expand[] in an uncontrolled counter motion pushing the hammer back up with virtually the same speed, force and energy of [Crowley's] initial strike." (*Id.*) Mr. Hanlon continued:

> It is my professional opinion with a reasonable degree of engineering certainty, that the failure of the [Game] which caused [Crowley's] injuries was a mechanical failure of the check valve within the shock absorber. This failure, while intermittent, would be easily detectable by routine, periodic maintenance checks which

---

[1] The parties dispute Six Flags' knowledge of the Game's alleged malfunction. Plaintiffs alleged a Six Flags' staff member told them of additional injuries caused by the Game prior to Crowley's injury. Crowley indicated this information on his accident report filed with and signed by the staff member. The staff member, when deposed, denied making such a statement but admitted to signing the accident report despite it containing "false information." Defendants allege this dispute is not material because Plaintiffs provide no citations to the record. (ECF No. 55 at 2; Pls.' Statement of Material Fact (ECF No. 55-1) ¶ 13; Def.'s Resp. to Pls.' Statement of Material Fact (ECF No. 60) ¶ 13.)

> included as a minimum, performance verification of the mechanical elements in the [Game]. This failure was caused by heavy use of the device over time . . . . This mechanical failure is not related to the amount of force applied from the impact of the hammer, rather from the frequency of strikes over time.

(*Id.*)

Six Flags objects to the production of Mr. Hanlon as an expert witness at trial; their primary objection being that the Hanlon Report and accompanying affidavit "provide little more than a recital of his personal opinions, unsupported by reasoning or reliable methodology." (ECF No. 45-1 at 14.) In support, Six Flags states: "Mr. Hanlon made no calculations of the forces involved and took no account of the effects of gravity, friction, the energy-absorbing characteristics of the spring, the striker pad, the rubber mallet head, or even an allegedly, non-functioning shock absorber . . . ." (ECF No. 45-1 at 14.)

It is undisputed that Mr. Hanlon did not inspect the Game. (ECF No. 48-3 ¶ 14; Mot. of Def. (ECF No. 45) ¶ 14.) Six Flags' expert, Ned R. Hansen, Ph.D., P.E., inspected the Game and found several discrepancies between Mr. Hanlon's description of the Game and the Game itself, most notably finding that the Game did not have a "check valve." (Mem. of Law in Supp. of Def.'s Mot., Ex. F (ECF No. 45-6) at 19-20.) Plaintiffs disagree, supported by Mr. Hanlon's Affidavit contending every shock absorber requires a check valve to function, even if the "check valve" is referenced by another name. (Aff. of Mark T. Hanlon, P.E. (ECF No. 48-4).)

Plaintiffs further argue Mr. Hanlon has specialized knowledge and experience in the field of amusement park operations and safety, beyond that of the average lay person, and is therefore qualified to testify. (Pls.' Mem. of Law in Opp. To Def.'s Mot. (ECF No. 48-1) at 14.) Additionally, Plaintiff's argue Mr. Hanlon's testimony is reliable because he reviewed the discovery available based on his specialized knowledge of the Game. (*Id.*) To that end, Plaintiffs

note the lack of inspection records and fault Six Flags for failing to maintain same. (*Id.* at 16-18.) It is undisputed Six Flags are not in possession of any maintenance, repair, or inspection records for 2010 to 2013. (Hobbie Cert., Ex. C (ECF No. 52-3), at 63:5-21.)

Relatedly, Six Flags moves for summary judgment, arguing that Plaintiffs cannot establish Six Flags breached any duty if the Court finds Mr. Hanlon's expert testimony is precluded. Plaintiffs oppose the summary judgment motion, alleging Six Flags may be held liable on a theory of *res ipsa loquitur*, regardless of the admission of Mr. Hanlon's testimony.

## II. DECISION

### A. Admissibility of Mr. Hanlon's Expert Testimony

Admission of expert testimony is governed by Federal Rule of Evidence 702, which states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702; *Buzzerd v. Flagship Carwash of Port St. Lucie, Inc.*, 397 Fed. App'x 797, 799 (3d Cir. 2010).

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the United States Supreme Court set forth factors to serve as guideposts for the district courts in determining the admissibility of expert scientific testimony. The factors have been summarized in this Circuit as follows: "(1) whether the methodology can and has been tested; (2) whether the technique has been subjected to peer review and publication; (3) the known or potential rate of error of the

methodology; and (4) whether the technique has been generally accepted in the proper scientific community." *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 152 (3d Cir. 1999) (citing *Daubert*, 509 U.S. at 593-94.)

Additionally, and more recently, the Third Circuit supplemented the *Daubert* factors with three (3) additional factors a district court might use in evaluating expert testimony: qualifications, reliability, and fit. *Elcock v. Kmart Corp.*, 233 F.3d 734, 741 (3d Cir. 2000) (citing *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 741-43 (3d Cir. 1994)); *Heller*, 167 F.3d at 152 (citing *Paoli*, 35 F.3d at 742 n.8). These factors, when evaluated, comprise and consider the *Daubert* factors and are therefore used in this District. *See Paoli*, 35 F.3d at 742.

**1. Qualifications**

"Qualification requires that the witness possess specialized expertise. [The Third Circuit] ha[s] interpreted this requirement liberally, holding that a broad range of knowledge, skills, and training qualify an expert as such." *Calhoun v. Yamaha Motor Corp., U.S.A.*, 350 F.3d 316, 321 (3d Cir. 2003); *Elcock v. Kmart Corp.*, 233 F.3d 734, 741 (3d Cir. 2000) (citing *Waldorf v. Shuta*, 142 F.3d 601 (3d Cir. 1998); *McGarrigle v. Mercury Marine*, 838 F. Supp. 2d 282, 289 (D.N.J. 2011).

Six Flags does not dispute Mr. Hanlon's qualifications (ECF No. 45-1, at 10), therefore the Court will proceed with the analysis.

**2. Reliability**

The Third Circuit instructs district courts to evaluate the proposed expert's methodology in its review of the testimony's reliability:

> [T]he testimony must be reliable. In other words, the expert's opinion must be based on the methods and procedures of science rather than on subjective belief or unsupported speculation; the expert must have good grounds for his or her belief. An assessment

of the reliability of scientific evidence under Rule 702 requires a determination as to its scientific validity.

*Calhoun*, 350 F.3d at 321; *McGarrigle*, 838 F. Supp. 2d at 289. Along with "any other[ factors] that are relevant," courts consider the following factors in determining the reliability of a proposed expert's testimony:

> (1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put.

*Paoli*, 35 F.3d at 742 & n.8 (citing *Daubert*, 509 U.S. at 591 and *United States v. Downing*, 753 F.2d 1224 (3d Cir. 1985)); *Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 405 (3d Cir. 2003); *McGarrigle*, 838 F. Supp. 2d at 290.

Defendants contend Mr. Hanlon's opinion "is entirely unsupported by any objective methodology, calculations, or other scientific or otherwise reliable reasoning." (ECF No. 45-1 at 1.) On the other hand, Plaintiffs contend Mr. Hanlon relied on "the evidence, his knowledge of the [Game] and the [Game's] Owner's Manual, *as well as scientific principle* and his own training, experience and knowledge." (ECF No. 55 at 14 (emphasis added).) Specifically, Plaintiffs refer the Court to the following portion of the Hanlon Report:

> [Crowley's] case is a classic example of Newton's Third Law: Every action (Force) has an equal and opposite reaction (Counter-Force).
>
> The Monroe air shock incorporated in this design is composed of two basic components,
>
> 1. A shock absorber with an internal oil reservoir and check/control valve to restrict/regulate flow of the liquid when the show is either compressed or extended.

6

> 2. The air bag/pneumatic spring surrounding the shock.
>
> It is my professional opinion, with a reasonable degree of engineering certainty that on the date of the incident, there was a level of compressed air, by design, in the air bag creating a pneumatic spring, when the steel striker cap was hit with the hammer, the mechanical spring/air shock spring was compressed downward, once the force from the hammer strike was exhausted and the strike pad was fully compressed, the dual spring released its stored energy and pushed the striker cap upward, at this time the check valve inside the shock failed to perform and was unable to control/regulate the movement of the shock. Thus, all the force conveyed by the hammer into the striker cap was rebounded upward into the hammer causing the hammer to rapidly bounce up and injure to the patron [Crowley].
>
> . . . .
>
> Consequently, in my opinion, with a reasonable degree of engineering certainty, the [Game] failure occurred as follows: when the "Strike Pad" was impacted by [Crowley]'s hammer strike, the "Strike Pad" cap was depressed, (pushed down), the energy from the hammer strike was then stored in the double spring mechanism, the control valve in the shock absorber failed, thus after the hammer was completed imparting its force (energy) compressing the "Strike Pad," the springs rapidly expanded in an uncontrolled counter motion pushing the hammer back up with virtually the same speed, force and energy of the initial strike. When [Crowley] had completed his swing of the hammer his body tilted forward and his head was close to the "Strike Pad." Therefore, he had no opportunity to avoid the hammer as it rapidly propelled upward by the unchecked spring.

(ECF No. 55 at 14-15 (quoting ECF No. 53-4).)

The Court is satisfied Mr. Hanlon's testimony is reliable. Mr. Hanlon relies on a well-known and well-tested scientific theory: Newton's Third Law. Six Flags argues this "middle school science" absent, at minimum, "calculations of the forces involved," among other factors, "serves more to confuse than enlighten the fact-finder." (ECF No. 45-1 at 14.) The Court disagrees. It is because this science is so widely accepted that its importance cannot be diminished or ignored

7

by the Court. *See, e.g.*, *Amadio v. Glenn*, Civ. A. No. 09-4937, 2011 WL 336721, at *9 (E.D. Pa. Feb. 1, 2011) (finding expert's testimony reliable for its reliance on vector analysis or Newton's second law of motion). Therefore, Mr. Hanlon's testimony, based on a well-tested, generally accepted, valid scientific theory, is reliable. If Six Flags wishes to challenge Mr. Hanlon on his conclusions, it is permitted to do so on cross examination at trial. *See Oddi v. Ford Motor Co.*, 234 F.3d 136, 146 (3d Cir. 2000) ("The analysis of the conclusions themselves is for the trier of fact when the expert is subjected to cross-examination." (quoting *Kannankeril v. Terminix International Inc.*, 128 F.3d 802, 806 (3d Cir.1997))).

### 3. Fit

"[T]he expert testimony must fit, meaning the expert's testimony must be relevant for the purposes of the case and must assist the trier of fact." *Calhoun*, 350 F.3d at 321; *McGarrigle*, 838 F. Supp. 2d at 289; *see Pineda v. Ford Motor Co.*, 520 F.3d 237, 244 (3d Cir. 2008) (listing the third requirement as "the expert's testimony must assist the trier of fact"). In other words, "the scientific knowledge must be connected to the question at issue." *Paoli*, 35 F.3d at 745 n.13; *McGarrigle*, 838 F. Supp. 2d at 293. "A court 'must examine the expert's conclusions in order to determine whether they could reliably flow from the facts known to the expert and the methodology used.'" *Oddi*, 234 F.3d at 145 (citing *Heller*, 167 F.3d at 153); *McGarrigle*, 838 F. Supp. 2d at 293. Importantly, the Third Circuit "emphasize[d] that the standard [for fit] is not that high" but is "higher than bare relevance." *Paoli*, 35 F.3d at 745.

Six Flags argues Mr. Hanlon's testimony does not and cannot "fit" because

> Mr. Hanlon offers no evidence that the check valve in fact failed, <u>no</u> explanation as to how the check valve even could have failed, <u>no</u> calculations as to how such a failure could have resulted in this incident, and <u>no</u> explanation as to why negligence had to be involved - other than his own bare and personal conclusion that it must be so.

8

(ECF No. 55 at 18; *see id.* (quoting *Wilson v. Saint-Gobain Universal Abrasives, Inc.*, No. 213-cv-1326, 2015 WL 1499477 (W.D. Pa., April 1, 2015) ("Each of [the expert's] opinions as to possible defects . . . depend on his own assumptions and lack a sufficient factual foundation in the record.").)

The Court disagrees with Six Flags' analysis. Mr. Hanlon's conclusions "could reliably flow from the facts known to [him] and the methodology used" – i.e., Newton's Third Law. *Oddi*, 234 F.3d at 145. Mr. Hanlon clearly explains in his report how the scientific knowledge relates to the Game, which the Court finds would assist the trier of fact, *Pineda*, 520 F.3d at 244; *Calhoun*, 350 F.3d at 321; *McGarrigle*, 838 F. Supp. 2d at 289:

> [Crowley's] case is a classic example of Newton's Third Law: Every action (Force) has an equal and opposite reaction (Counter-Force).
>
> . . . .
>
> [A]ll the force conveyed by the hammer into the striker cap was rebounded upward into the hammer causing the hammer to rapidly bounce up and injure to the patron [Crowley].
>
> . . . .
>
> [I]n my opinion, with a reasonable degree of engineering certainty, the [Game] failure occurred as follows: when the "Strike Pad" was impacted by [Crowley]'s hammer strike, the "Strike Pad" cap was depressed, (pushed down), the energy from the hammer strike was then stored in the double spring mechanism, the control valve in the shock absorber failed, thus after the hammer was completed imparting its force (energy) compressing the "Strike Pad," the springs rapidly expanded in an uncontrolled counter motion pushing the hammer back up with virtually the same speed, force and energy of the initial strike. When [Crowley] had completed his swing of the hammer his body tilted forward and his head was close to the "Strike Pad." Therefore, he had no opportunity to avoid the hammer as it rapidly propelled upward by the unchecked spring.

(ECF No. 53-4 at 8-10.)

Accordingly, Mr. Hanlon's testimony is fit for the purpose of determining admissibility and, as such, is entirely admissible following the Court's findings above that he is not precluded by the "trilogy of restrictions on expert testimony." *Calhoun*, 350 F.3d at 321. Six Flags' Motion to Preclude is **DENIED**.

**B. Summary Judgment**

Federal Rule of Civil Procedure 56(c) governs summary judgment motions and states: "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of showing no genuine issue exists as to any material fact then, if met, the nonmoving party must "come forward with 'specific facts showing there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585 n.10, 587 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). A fact is "material" if its existence or nonexistence affects the outcome of the suit, and a dispute is "genuine" if a reasonable fact finder could return a verdict in favor of the nonmoving party. *Anderson*, 477 U.S. at 248, 252. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. . . . If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Id.* at 249 (internal citations omitted).

Therefore, the Court must look to claims at issue. Crowley alleges[2]: (1) Six Flags negligently caused operated and/or maintained the Game causing a dangerous condition (Count I);

---

[2] Plaintiffs allege a fourth claim as to Jessica Crowley for loss of consortium (Count IV) (ECF No. 1-1) which the parties do not raise in this motion.

(2) Six Flags "negligently and defectively design[ed], manufactur[ed], repair[ed], refurbish[ed], recondition[ed], market[ed], s[old], or otherwise place[d] in the stream of commerce the [Game] causing [it] to be in a dangerous and unsafe condition" (Count II); and (3) failure to warn (Count III). As to the first two negligence claims, Plaintiffs maintain they can, in the alternative, be proved by a theory *res ipsa loquitor*.

**1.** *Res Ipsa Loquitur*

Plaintiffs maintain their cause of action may proceed on a theory of *res ipsa loquitur* even if Mr. Hanlon's testimony is precluded. Although Mr. Hanlon's testimony is admissible, the Court finds Plaintiffs may not proceed on this theory.

*Res ipsa loquitur* is a theory of proving negligence by circumstantial evidence, providing the Court with an "evidentiary rule that governs the adequacy of evidence in some negligence cases." *Myrlak v. Port Authority of New York and New Jersey*, 157 N.J. 84, 95 (1999). An inference of negligence is permitted where: "(a) the occurrence itself ordinarily bespeaks negligence; (b) the instrumentality was within the defendant's exclusive control; and (c) there is no indication in the circumstances that the injury was the result of the plaintiff's own voluntary act or neglect." *Id.* (quoting *Bornstein v. Metropolitan Bottling Co.*, 26 N.J. 263, 269 (1958)); *Jerista v. Murray*, 185 N.J. 175, 192 (2005) (quoting *Buckelew v. Grossbard*, 87 N.J. 512, 525 (1981) and *Bornstein*, 26 N.J. at 269)). Plaintiff must prove all of these elements by a preponderance of the evidence. *Szalontai v. Yazbo's Sports Café*, 183 N.J. 386, 389 (2005); *see Myrlak*, 157 N.J. at 96.

Plaintiffs have not met their burden in showing Six Flags should be found liable under a theory of *res ipsa loquitur*. The Game was not within the Six Flags' exclusive control at the time of Crowley's injury. Rather, Crowley was in control of the Game. The Court notes Plaintiffs' argument that the "instrumentality" was the shock absorber rather than the mallet, but finds

Crowley's use of the game at the time of his injury is sufficient to reject a *res ipsa loquitur* theory of liability.

Accordingly, Plaintiffs may not proceed on a theory of *res ispa loquitur*.

**2. Negligence (Counts I & II)**

In order for Plaintiffs to set forth a negligence claim, they must prove: (1) Six Flags owed Plaintiffs a duty of care; (2) Six Flags breached that duty; and (3) as a direct and proximate result of Six Flags' breach, Plaintiffs suffered injuries. *Endre v. Arnold*, 300 N.J. Super. 136, 142 (App. Div. 1997).

Six Flags moves for summary judgement on the presumption that Mr. Hanlon's testimony is inadmissible:

> Summary Judgment must be granted because, without a liability expert, plaintiffs do not have evidence to establish the breach of any alleged duty to protect Mr. Crowley from the harm claimed in this matter. . . . Therefore plaintiffs are required to prove a prima facie case of negligence, which they cannot do without a proper expert.

(ECF No. 45-1 at 21.)

Having permitted Mr. Hanlon's testimony, the Court sees no reason proffered by Six Flags to grant summary judgment as a matter of law on the negligence claims.[3] Accordingly, Six Flags' Motion for Summary Judgment is **DENIED** as to the negligence claims (Counts I & II).

---

[3] Even so, Plaintiffs have met their burden in demonstrating genuine issues of material fact exists. Most significantly, a genuine issue exists as to whether Defendant had notice of any alleged malfunction or whether the Game had a "check valve," which is alleged to be the malfunctioning piece. Where material issue of fact exist, the Court cannot grant summary judgment. *Anderson*, 477 U.S. at 248, 249-52.

12

### 3. Failure to Warn (Count III)

The New Jersey Products Liability Act, N.J.S.A. §§ 2A: 58C-1, *et seq.* ("PLA") provides plaintiffs with the sole cause of action to prosecute a product liability claim. *Tirrell v. Navistar Int'l, Inc.*, 248 N.J. Super. 390, 398-99 (App. Div. 1991). The PLA specifically defines a "product liability action" to mean "any claim or action brought by a claimant for harm caused by a product, irrespective of the theory of the underlying claim, except for harm caused by breach of an express warranty." N.J.S.A. § 2A:58C-1. Thus, the PLA subsumes independent failure to warn claims. *See Koruba v. Am. Honda Motor Co., Inc.*, 396 N.J. Super. 517, 531 (App. Div. 2007).

The PLA provides three ways in which plaintiff can prove a product was defective. N.J.S.A. § 2A:58C-2. One method specifically relates to defendant's failure to warn:

> A manufacturer or seller of a product shall be liable in a product liability action only if the claimant proves by a preponderance of the evidence that the product causing the harm was not reasonably fit, suitable or safe for its intended purpose because it: a. deviated from the design specifications, formulae, or performance standards of the manufacturer or from otherwise identical units manufactured to the same manufacturing specifications or formulae, or b. **failed to contain adequate warnings or instructions**, or c. was designed in a defective manner.

*Id.* (emphasis added).

New Jersey courts have interpreted the PLA's failure to warn cases as a claim that "the defect is in the failure to warn unsuspecting users that a product can potentially cause injury." *Zaza v. Marquess & Nell, Inc.*, 144 N.J. 34, 57 (1996); *Coffman v. Keene Corp.*, 133 N.J. 581, 594-95 (1993). Stated another way, defendant's duty to warn under the PLA "is premised on the notion that a product is defective absent an adequate warning for foreseeable users that the product can potentially cause injury." *Gendelman v. Blumenstein*, Civ. A. No. 12-6976, 2015 WL 3489883, at *4 (D.N.J. June 2, 2005) (internal quotation marks omitted).

Importantly, the PLA only permits its failure to warn claims to proceed against a manufacturer, distributor, or seller of a product. N.J.S.A. § 2A:58C-2. The claims cannot proceed against parties that did not manufacture or sell the product. *Id.* Amusement park owners do not constitute manufacturers of sellers of the product. *Morgan v. Six Flags Great Adventure*, 2013 WL 2300979 (App. Div. May 28, 2013); *Doerflein v. Six Flags Great Adventure*, 2006 WL 392980 (App. Div. Feb. 22, 2006).

Plaintiffs' failure to warn claim, which was brought independently of the PLA, must be dismissed. Even if Plaintiffs were to proceed under the PLA, their failure to warn claim would fail because Six Flags is not a product seller within the scope of the PLA. Courts have consistently held that amusement park owners do not constitute designers, sellers, or manufacturer of their amusement rides, and therefore cannot be held liable under PLA failure to warn theory of liability. *See* N.J.S.A. § 2A:58C-2; *Morgan*, 2013 WL 2300979; *Doerflein*, 2006 WL 392980.

Accordingly, Six Flags' Motion for Summary Judgment is **GRANTED** as to Plaintiffs' failure to warn claim (Count III).

### III. CONCLUSION

For the reasons set forth above, Six Flags' Motion to Preclude Plaintiffs' Proposed Liability Expert is **DENIED**, and Six Flags' Motion for Summary Judgment is **GRANTED** as to Count III and **DENIED** as to Counts I, II, and IV. Further, Plaintiffs may not proceed on a theory of *res ipsa loquitor* at trial.

> */s/ Brian R. Martinotti*
> **HON. BRIAN R. MARTINOTTI**
> **UNITED STATES DISTRICT JUDGE**

Dated: May 8, 2017